THE MIDDLETOWN FERRY COMPANY *vs.* THE TOWN OF MID-DLETOWN.

The statute, (Gen. Statutes, tit. 64, sec. 10), provides that the personal property of a corporation shall be taxed in the town "in which it has its principal place of business or exercises its corporate powers." Held that the principal place of business of a corporation, within the meaning of the statute, is the place where the governing power of the corporation is exercised, and not the place where the principal labor of the employés of the corporation is done.

The Middletown Ferry Company was chartered for the purpose of operating a ferry across the Connecticut River from Middletown to Portland. The limits of Middletown extend to the opposite bank of the river, so that the boats run wholly within the town of Middletown, but the office of the corporation is in Portland, and four-fifths of its stock is owned there, and the corporation by a regular vote established Portland as its principal place of business. Held that the personal property of the corporation was taxable in Portland and not in Middletown.

And held not to alter the case that the corporation was located in Middletown from its organization in 1852 till the year 1868, and that it then by vote transferred its location to Portland; nothing in its charter prohibiting such change.

DEBT, to recover money paid as taxes to the defendants.; brought to the Superior Court in Middlesex county, and tried to the court upon the general issue before *Phelps*, *J.* The court made the following finding of facts :

The plaintiffs were incorporated as a ferry company in due form in the year 1852, and all the corporators named in the charter were residents of Middletown. The corporation was regularly organized in pursuance of its charter, and has continued to the present time to operate one or more steam ferry boats, and transport passengers and teams across. Connecticut River between the towns of Middletown and Portland. Until the year 1869 the corporation had its office, and was located and transacted its corporate business, in Middletown, and its personal property was there assessed ; and until about that time a majority of its directors resided there, and the largest portion of its stock was owned and held by citizens of that town, and its taxes were there paid ; but since the year 1868 four-fifths of its stock has been owned in the

town of Portland, a majority of its directors have resided there, and by a vote passed that year and hereinafter stated the corporation changed its location and place of business, and of the exercise of its corporate powers, from Middletown to Portland ; and during all the time since, its regular and special meetings have all been there held, and all its corporate powers there exercised, and all its books and papers there deposited and kept, excepting such as were in daily use upon and in the operation of the ferry boats.

The boundary line separating the towns of Middletown and Portland is the eastern shore of Connecticut River, so that when the plaintiffs' boats are passing back and forth between these towns, they are constantly within the territorial limits of Middletown ; and the ordinary business of the corporation is all there transacted, its tolls are collected on its boats while on their passages, its boats lie on the western side of the river over night, the employés on its boats reside in Middletown, and its coal is there stored. The captain of the boat in active use is for convenience the secretary and treasurer of the corporation, and keeps the business books necessary for daily use on the boat, and at his house in Middletown. The corporation has two spare boats, besides the one in actual use, and those when unemployed are moored on the Middletown side of the river, and all its boats have since its organization been registered in the custom house as of Middletown.

At a meeting of the stockholders of the corporation, duly held on the 25th day of July, 1868, the following votes were passed : " *Voted*—That section 4th of the by-laws be so amended that the annual meetings shall be held on the 2d Tuesday of January, at such place in the town of Portland as shall be specified in the notice. *Voted*—That section 5th of the by-laws be so amended that all special meetings of the company shall be held in the town of Portland."

After the above votes were passed, and after the plaintiffs in pursuance of them had changed their location and the place of the exercise of their corporate powers to the town of Portland, the defendants continued to assess their personal

property as before, against their remonstrance and protest; and to prevent their boats being levied upon, and under such protest, they involuntarily and unwillingly paid taxes on the property for the years 1869, 1870 and 1871, amounting in all to $710, to recover which the present suit is brought.

The plaintiffs have been willing and claimed the right to have their personal property assessed in Portland, and in 1869 made and presented a list of it to the assessors of that town, but afterwards refused to pay the tax upon it because the defendants had then compelled them to pay a tax to the town of Middletown, and consequently the plaintiffs have never in fact paid any taxes to the town of Portland.

On these facts the court found the issue in favor of the plaintiffs, and rendered judgment for them to recover from the defendants $775, being the amount of $710 with interest, and also the costs of suit.

The defendants brought the record before this court by a motion in error, assigning as error that the court erred in deciding that the votes passed by the corporation in July, 1868, changed its principal place of business and the place where its corporate powers were exercised, from Middletown to Portland.

*Bacon* and *Roberts*, for the plaintiffs in error.

1. We insist that the charter of the Middletown Ferry Company, by necessary implication, locates the corporation in Middletown. 1st. The name implies it. "The Middletown Ferry Company" would seem to be as much a Middletown corporation as "The Middletown Bank," or "The Middletown Gas Light Co." 2d. All the corporators were residents of Middletown at the time the charter was granted. 3d. The conveyance by the proprietors of the old ferry, spoken of in section 5 of the charter, to the then new company, not of lands alone, but "of rights, privileges, franchises, tenements, boats, horses, and all other property whatsoever," was to be recorded in the town clerk's office of Middletown alone. If then, by implication, the charter of this company locates the corporation in Middletown, that location cannot

be changed except by legislative enactment; and the votes making a change of location are nugatory as being inconsistent with its charter. Angell & Ames on Corp., § 343.

2. But if this corporation is not located by its charter, still its "principal place of business," in spite of the votes referred to, is in Middletown. The finding shows that the bounds of Middletown extend to the eastern bank of the river, and that the boats of this company when engaged in their business are always within the limits of Middletown. They cannot run out of it. Their revenue is collected there. Their boats when not in use lie there. Their secretary lives there, and all their employés. They make Middletown their home port in their custom house papers. And there they are properly taxed upon their personal estate under the statute. *Proprietors of Cornish Bridge* v. *Richardson*, 8 N. Hamp., 207; *Easton Bridge Co.* v. *The County*, 9 Penn. S. R., 415; *City of St. Louis* v. *Ferry Co.*, 11 Wall., 423. It seems to be the policy of our law to tax personal property in any town in this state where the same is used for the purposes of trade, manufacture, or business. *Sprague* v. *Town of Lisbon*, 30 Conn., 18. In determining the residence of a corporation and particularly its "place of business," the residence of the stockholders or directors is of no importance. *Cromwell* v. *Charleston Ins. Co.*, 2 Rich. (S. C.), 512; *Louisville &c. R. R. Co.* v. *Letson*, 2 How., 497; *Conn. River R. R. Co.* v. *Cooper*, 30 Verm., 476; *Glazie* v. *S. Carolina R. R. Co.*, 1 Strob., 70. Nor the place of meeting of the stockholders and directors. *Crofut* v. *Brooklyn Ferry Co.*, 36 Barb., 201; *McCall* v. *Byram Manuf. Co.*, 6 Conn., 428; *City of St. Louis* v. *Ferry Co.*, 11 Wall., 423. The votes changing the by-laws of the company, and the subsequent holding of annual and special meetings in Portland, cannot have the effect of changing the "place of business" of the corporation. They do not even establish an *office* in the town of Portland; meetings are to be held *at such place in the town of Portland as shall be specified in the notice.* If they had in express terms established *an office* in Portland, it would not

have made the corporation an *inhabitant* of that town. *Hartford Fire Ins. Co.* v. *Town of Hartford*, 3 Conn., 15.

3. But finally, upon the very strongest ground claimed by the plaintiffs below, they are not *equitably* entitled to recover this money from the plaintiffs in error. An action to recover money paid for taxes is an equitable action. *Goddard* v. *Town of Seymour*, 30 Conn., 394. If the votes have the effect claimed, yet it cannot be disputed that " the place of business " of the corporation, or " the place where it exercises its corporate powers," was *partially* within the limits of Middletown. In this case it would come under the head of those corporations which have " establishments for business situated in different towns." Such corporations may be taxed upon their personal estates in each of the towns where such establishments are situated. Gen. Statutes, p. 710, sec. 10. It appears by the finding that this corporation has paid no taxes in Portland during the three years in controversy, nor has it ever paid any there. If it succeeds in its present claim, it wholly escapes taxation during the years 1869, 1870, and 1871. No argument is needed to prove this manifestly inequitable.

*Tyler* and *Culver*, for defendants in error.

PARK, J. The statute in relation to the assessment and collection of taxes, (Gen. Statutes, page 710,) provides that the personal property of certain corporations shall be assessed and set in the list of the towns in which such corporations have their principal place of business or exercise their corporate powers. The plaintiffs' corporation comes within this provision of the statute, and the plaintiffs claim, and the court has found, that during the time covered by the plaintiffs' declaration they had their principal place of business and exercised their corporate powers in the town of Portland.

This finding of the court would seem to decide the case in favor of the plaintiffs, unless it can be said, as a matter of law, that the principal place of business of a corporation, or

where it exercises its corporate powers, is where the business of the corporation is being carried on by its servants and agents, who perform such duties as the corporation requires of them.

It appears in the case that the town of Middletown extends to the east side of the Connecticut River, and that consequently the ferry boats of the plaintiffs, in plying back and forth from the east to the west shore of the river in the performance of the business of the plaintiffs, are all the time within the limits of the defendant town; and hence the defendants claim that, during the time in question, the principal place of the business of the plaintiffs, or where they exercise their corporate powers was upon their ferry boats on the river, although the court has found that, previous to the time in question, the stockholders of the plaintiffs' corporation, in legal meeting, duly warned and held, voted, in good faith, to change its place of business from the town of Middletown to the town of Portland, where four-fifths of the stock of the corporation was owned and held, and where a majority of the directors resided; and although all the regular and special meetings of the corporation and of the directors have ever since been there held, and all the books and papers of the corporation, except such as have been in daily use in carrying on the business of the corporation, have been there deposited.

We think it is clear that the principal place of the business of a corporation, or where it exercises its corporate powers, within the meaning of the statute, is where the governing power of the corporation is exercised ; where those meet in council who have a right to control its affairs and prescribe what policy of the corporation shall be pursued, and not where the labor is performed in executing the requirements of the corporation in transacting its business. It may be true in the sense of *"qui facit per alium facit per se,"* that a corporation may be said to exercise its corporate powers wherever its business is being transacted, but in this statute the expression is used in a stricter sense. It has reference to what is done directly by the corporation itself in the management of its affairs, and not to what is done by others in obedience to

its requirements. We think this claim of the defendants is untenable.

In the decision we have made of this question, we have not considered what would be the effect, if a corporation should change its principal place of business in order to avoid a rate of taxation in the town from which the removal is made, higher than it would be subject to in the town to which it has removed its principal place of business. There is nothing in the case tending to show that this corporation changed its principal place of business for any such purpose, and we are therefore bound to consider the change as made in good faith.

Again, it is claimed that the plaintiffs had no right under their charter to change their principal place of business, or the place where they had exercised their corporate powers; that this place having once been established by the charter in the town of Middletown, it must there remain, and that it did consequently remain there during the years in which the assessments of the plaintiffs were made. But we discover nothing in the charter which sustains this claim. Nothing in it has been pointed out, except some expressions from which a slight inference might be drawn that it was expected that the corporation would remain a Middletown corporation, but this is not sufficient to make void the acts of the corporation in removing its principal place of business from the town of Middletown to the town of Portland, when the statute seems to contemplate that such corporations will change their principal place of business, or the place where they exercise their corporate powers, as occasion may require. If it were not so it would have declared that such corporations should be taxed in the towns where they first had their corporate existence.

There is no error in the judgment complained of.

In this opinion the other judges concurred.