RIVERBOAT, INC. *v.* CITY OF HARTFORD

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE NO. 94533

Memorandum filed December 15, 1966

*Robinson, Robinson & Cole,* of Hartford, for the plaintiff.

*Leo Mazotas,* assistant corporation counsel, for the defendant.

MIGNONE, J.   This action was brought in two counts.   The first count makes the claim that the action of the defendant city in placing the "Dolly Madison," an excursion vessel, on its tax list was unlawful in that the vessel's tax situs was in the town of Essex.   The second count, involving the fair market value of the vessel for tax assessment purposes, was not pursued.

The issue presented requires an interpretation of § 12-59 of the General Statutes as applied to the fact situation herein.   The city of Hartford listed the vessel on its tax list of July 1, 1965, placing a valuation of $39,000 for tax assessment purposes.   The town of Essex also placed the vessel on its tax list of October, 1965, placing a valuation of $3600 on the vessel.

The plaintiff corporation, as set out in its certificate of organization as filed, was organized on April 21, 1965, with its principal office listed as 1 Maple Avenue, Essex, Connecticut.   Of four officers and directors named, Leeds Mitchell is designated as president, treasurer and director, with a business address at 159 Wethersfield Avenue, Hartford, and a residence address in Glastonbury.   Mrs. Enid B. Warner is listed as vice president and director, with a residence address as 1 Maple Avenue, Essex, Connecticut, but with no business address set forth. Gifford D. Warner, whom the evidence disclosed is the husband of Enid B. Warner, is named as a director with a residence address at 1 Maple Avenue, Essex, but with no business address listed.   John W. Hincks, the attorney who handled the incorpora-

tion, is listed as a director with a business address in Hartford and a residence in West Hartford.

In a document subscribed and sworn to by Enid B. Warner as secretary of Riverboat, Inc., on June 10, 1965, and filed in connection with the registry of the vessel, the business address of the corporation is given as 1 Maple Avenue, Essex, and the "Home Port of Vessel" as New London, Connecticut. Also, on another document, filed with the United States department of commerce and attesting the ownership of the vessel, the "offices" of the corporation are listed at 1 Maple Avenue. "The Dolly Madison" is referred to as of New London, Connecticut. Still another document entitled "Designation of Home Port of Vessel" and filed with the collector of customs at New London, states that the vessel business of the owner, Riverboat, Inc., "will be conducted at and from the following address: 1 Maple Avenue, Essex, Connecticut."

It is mainly on the strength of these documents that the plaintiff makes claim that the tax situs of this vessel is in Essex, where Enid B. Warner, the owner of all the stock of the plaintiff corporation, and her husband, Gifford D. Warner, live at 1 Maple Avenue.

The evidence adduced brought out that the plaintiff corporation acquired the Dolly Madison on or about June 10, 1965. Its business is to conduct excursion trips to Long Island Sound, and 90 to 95 percent of these originate from Hartford, where a temporary dock to service passengers coming aboard and leaving the boat has been built. The plaintiff corporation has business stationery which bears the address 159 Wethersfield Avenue, Hartford, Conn., and lists a Hartford telephone number, 203 246-4432. The evidence adduced was that the address and number listed are those of an answer-

ing service which handles all calls for the plaintiff. Newspaper advertisements likewise listed the Wethersfield Avenue address.

Introduced in evidence as a plaintiff's exhibit is a letter-size sheet bearing, in bold caption at the top, the inscription "City of Hartford" and, underneath, the legend "Department of Assessment." It contains spaces for information concerning tax assessability which were filled out by Leeds Mitchell, who is listed as president in the certificate of organization filed for Riverboat, Inc., on October 27, 1965. The plaintiff has sought to minimize the effect of this document on the basis that it was filled out in a rush by Mitchell after he had had a personal conversation with Salvatore Cavalieri, a representative of the assessor's office of the city of Hartford who came aboard the Dolly Madison. The evidence brought out that following this talk between Mitchell and Cavalieri, Cavalieri left the boat, as did Mitchell. Thereafter, as Mitchell was about to leave in his automobile, Cavalieri returned to speak to him and gave Mitchell the form to fill out. Mitchell testified that he completed this report hurriedly and that he was not asked to swear to it. He further testified that previous to signing this report he had tendered his resignation as president, but he admitted it had not been accepted.

The importance of this document is that the address of the corporation is given as 159 Wethersfield Avenue. A line stating, "If you claim that your boat is not taxable in Hartford, please indicate town where tax is now paid _____," was left vacant. The contention is made that Mitchell could not bind the corporation since he was not an owner, nor did he have the authority to sign on behalf of the corporation owner. But the evidence showed that Mitchell was still the president and treasurer

of the plaintiff at the time he signed the report. As such officer, he had authority to sign a document on behalf of the corporation. The fact that it was not required to be signed in an affidavit form under oath cannot vitiate its resulting effect on the plaintiff's tax status and has no compelling force. The court observed that the witness Mitchell is patently an intelligent person who must be held to have known that he was dealing with a representative of the Hartford assessor's office and understood the import of the paper he signed.

This brings us to the issue whether the requirements of the statute are met to impose this tax liability in favor of the defendant. The statute, § 12-59, sets out conditions under which personal property of a corporation may be taxed. One is that if property is permanently located or stationed in a particular town for at least seven of the twelve months preceding the assessment day, it is taxable in that town. If this condition is not met, the property "shall be set in the list of the town in which such corporation has its principal place of business or exercises its corporate powers. The evidence is undisputed that this vessel was not located in either Hartford or Essex for at least seven months preceding the assessment date. The answer to the issue presented herein therefore depends upon the application and interpretation of § 12-59 as to where the plaintiff's principal place of business was located or where the plaintiff exercised its corporate powers as of July 1, 1965.

The plaintiff claims that the town of Essex is the principal place of business and the place where the corporate powers are exercised. The certificate of incorporation was not put into evidence, but the evidence adduced supports the inference that the essential powers granted the corporation were to

operate excursion vessels such as the Dolly Madison. Since 90 to 95 percent of the business originated from Hartford, it is fair to conclude that the business powers of conducting excursion trips were carried on primarily in and from Hartford. There was no evidence that any passengers were taken on from Essex. The fact that when this vessel is not in operation it is berthed in Essex or Old Saybrook for repairs and overhauling does not make invalid the conclusion as to where the corporate powers are principally carried out. See *Shaw* v. *Hartford,* 56 Conn. 351, 353. In *Jackson* v. *Union,* 82 Conn. 266, 268, owners who lived in another town were held liable to pay taxes on timber which had been cut and sold in the town of Union, "although no person residing in the town of Union had charge of such business." The plaintiff corporation's business must be held to be carried on where its principal asset, the vessel Dolly Madison, is put to its most productive use, namely, Hartford. The fact that the plaintiff claims that its corporate business is carried on from Essex is not conclusive. *Jackson* v. *Union,* supra; *Williams Bros. Mfg. Co.* v. *Naubuc Fire District,* 92 Conn. 672, 677.

The plaintiff bases its claim principally on the case of *Middletown Ferry Co.* v. *Middletown,* 40 Conn. 65 (1873). It is true that a reading of that case would seem to give support to the plaintiff's position. But this court cannot find that, on the facts herein presented, the principal place of business of the plaintiff corporation is actually in Essex and not in Hartford. Considerable significance must be attached to the fact that plaintiff's stationery lists a Hartford business address and makes no reference whatever to any Essex address. The evidence adduced indicated that the organization meeting was held in Hartford, Connecticut. Despite the disclaimer of the plaintiff's president, Mitchell,

the court finds that he knowingly listed the business address of the plaintiff as being in Hartford—at the same address as printed on the stationery. The fact that the residence address of the principal stockholder and secretary, Mrs. Enid Warner, and that of her husband is in Essex and that this address is listed on various documents filed for enrolling and licensing the vessel in compliance with federal government requirements is not conclusive. See *Smith* v. *State,* 64 Wash. 2d 323, 331. Of great significance is the fact that the town of Essex, itself, by its envelope postmarked June 7, 1966, sent its tax bill for this same vessel, on its tax list of October 1, 1965, to

> "Riverboat Inc
> Leeds Mitchell Pres
> 159 Wethersfield Ave
> Hartford, Conn"

In this case there was no evidence that any of the excursion trips originated or ended in Essex. The case of *Standard Oil Co.* v. *Peck,* 342 U.S. 382 (1952), reversed the previous rule that vessels operating in inland waters were only taxable by the state where the owner corporation was domiciled. The *Peck* case emphasizes (p. 385) that the tax must have a "relation to the opportunities, benefits, or protection which the taxing state gives those corporations." The same principle is applicable to a municipality or town as a subdivision of the state. The addresses of a principal office listed in the documents filed by the plaintiff "do not constitute the only relevant or material information upon the basis of which" the defendant's assessors may take action under § 12-59. *Cooley Chevrolet Co.* v. *West Haven,* 146 Conn. 165, 169.

The statute in issue, § 12-59, is an ancient one, dating back to the enactment of "An act prescribing

the place for assessing Corporations" by the General Assembly in 1826. Public Acts 1826, c. 7 (Statutes, 1824, p. 487) ; Statutes, 1835, p. 529. The original wording of this 1826 enactment is: "That all personal property belonging to any Corporation or Community, liable to be assessed and taxed, shall be assessed and set in the list in the Town wherein the manufacturing house, or other principal house or place where such Corporation or Community transacts its business, or exercises its corporate powers shall be situated; or if there shall be more than one such place where any such Corporation or Community exercises its corporate powers as aforesaid, the said property shall be assessed in the Town where the Clerk of said Corporation or Community may reside. *Provided,* nothing in this act shall be construed to render taxable the personal property of any Corporation, whose stock is now by law liable to be assessed and taxed."

A salient aspect of this case is the gross disparity between the amount of the assessment in Hartford as compared to the Essex assessment. As *Middletown Ferry Co.* v. *Middletown,* supra, points out (p. 71), the court in that case did not consider, in reaching its decision, the question whether the plaintiff had attempted to select Portland as its place of business in order to avoid a higher rate of taxation in Middletown. In the instant case, the inference can fairly be drawn that the plaintiff's motivation in claiming Essex as the place of business was its expectation that the assessment there would be considerably lower.

The issue, therefore, resolves itself into drawing a proper conclusion as to where the "principal place of business" of Riverboat, Inc., was located. Under all the evidence adduced, the court finds that the principal place of business of the plaintiff on July

1, 1965, was in Hartford. The plaintiff has failed to sustain its burden of proof, pursuant to § 12-119 of the General Statutes, that the tax laid by the defendant city was on property not taxable in that city.

Judgment for defendant.