TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-102 |
| of | : | |
| | : | May 16, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE DONALD N. STAHL, DISTRICT ATTORNEY, COUNTY OF STANISLAUS, has requested an opinion on the following question:

May a charter city adopt an ordinance making it a crime to place graffiti upon real or personal property located within the city?

CONCLUSION

A charter city ordinance making it a crime to place graffiti upon real or personal property located within the city would be void due to its duplication of state criminal statutes.

ANALYSIS

A charter city has enacted an ordinance which makes it unlawful for a person to place graffiti upon any property located within the city. The ordinance provides: "It shall be unlawful for any person to apply graffiti upon any property within the city." A violation of the ordinance constitutes a criminal infraction, punishable by fine, community service, and restitution. "Graffiti" is defined under the ordinance as "any inscription, word, figure, or design that is marked, etched, scratched, drawn, sprayed, painted, pasted or otherwise affixed to, or on, any surface to the extent that same was unauthorized by the owner thereof . . . ." The ordinance defines "property" as "real or personal property, whether publicly or privately owned, within the City." We are asked to determine whether

the ordinance is in conflict with state criminal statutes and void under applicable principles of constitutional law.   We conclude that it is.

Penal Code section 594[1] provides:

"(a)   Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own, in cases other than those specified by state law, is guilty of vandalism:

"(1)   Defaces with graffiti or other inscribed material.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b)(1)   If the amount of defacement, damage, or destruction is fifty thousand dollars ($50,000) or more, vandalism is punishable by imprisonment in the state prison or in a county jail not exceeding one year, or by a fine of not more that fifty thousand dollars ($50,000), or by both that fine and imprisonment.

"(2)   If the amount of defacement, damage, or destruction is five thousand dollars ($5,000) or more but less than fifty thousand dollars ($50,000), vandalism is punishable by imprisonment in the state prison, or in a county jail not exceeding one year, or by a fine of not more than ten thousand dollars ($10,000), or by both that fine and imprisonment.

"(3)   If the amount of defacement, damage, or destruction is four hundred dollars ($400) or more but less than five thousand dollars ($5,000), vandalism is punishable by imprisonment in a county jail not exceeding one year, or by a fine of five thousand dollars ($5,000), or by both that fine and imprisonment.

"(4)   If the amount of defacement, damage, or destruction is less than four hundred dollars ($400), vandalism is punishable by imprisonment in a county jail for not more than six months, or by a fine of not more that one thousand dollars ($1,000), or by both that fine and imprisonment.

"(c)   Upon conviction of any person under this section for acts of vandalism consisting of defacing property with graffiti or other inscribed materials, the court may, in addition to any punishment imposed under subdivision (b), at the victim's option, order the defendant to clean up, repair, or replace the damaged property himself or herself, or to pay for someone else to do so.

"(d)   If a minor is personally unable to pay a fine levied for acts prohibited by this section, the parent of that minor shall be liable for payment of the fine.   A court

---

[1]All references hereafter to the Penal Code are by section number only.

may waive payment of the fine or any part thereof by the parent upon a finding of good cause.

"(e)   As used in this section, the term `graffiti or other inscribed material' includes any unauthorized inscription, word, figure, mark, or design that is written, marked, etched, scratched, drawn, or painted on real or personal property."

Section 640.5 states:

"(a)   Any person who defaces with graffiti or other inscribed material the interior or exterior of the facilities or vehicles of a governmental entity, as defined by Section 811.2 of the Government Code, or the interior or exterior of the facilities or vehicles of a public transportation system as defined by Section 99211 of the public Utilities Code, or the interior or exterior of the facilities of or vehicles operated by entities subsidized by the Department of Transportation or the interior or exterior of any leased or rented facilities or vehicles for which any of the above entities incur costs of less than two hundred fifty dollars ($250) for cleanup, repair, or replacement is guilty of an infraction, punishable by a fine not to exceed five hundred dollars ($500) and by a minimum of 24 hours of community service for a total time not to exceed 100 hours over a period not to exceed 90 days, during a time other than during his or her hours of school attendance or employment.  This subdivision does not preclude application of Section 594.

"(b)   If the person has been convicted previously of an infraction under subdivision (a) or has a prior conviction of Section 594, 594.3, 594.4, 640.6, or 640.7, the offense is a misdemeanor, punishable by imprisonment in a county jail not to exceed six months, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.  As a condition of probation, the court shall order the defendant to preform a minimum of 48 hours of community service not to exceed 200 hours over a period not to exceed 180 days during a time other than during his or her hours of school attendance or employment.

"(c)   Every person who, having been convicted previously under this section or Section 594, 594.3, 594.4, 640.6, or 640.7, or any combination of these offenses, on two separate occasions, and having been incarcerated pursuant to a sentence, a conditional sentence, or a grant of probation for at least one of the convictions, is subsequently convicted under this section, shall be punished by imprisonment in a county jail not to exceed one year.  As a condition of probation, the court may order the defendant to perform community service not to exceed 300 hours over a period not to exceed 240 days during a time other than during his or her hours of school attendance or employment.

"(d)(1)   Upon conviction of any person under subdivision (a), the court, in addition to any punishment imposed pursuant to subdivision (a), (b), or (c), at the

victim's option, may order the defendant to perform the necessary labor to clean up, repair, or replace the property damaged by that person.

"(2)   If a minor is personally unable to pay any fine levied for violating subdivision (a), (b), or (c), the parent or legal guardian of the minor shall be liable for payment of the fine.  A court may waive payment of the fine or any part thereof by the parent or legal guardian upon a finding of good cause.

"(e)   Any fine levied for a violation of subdivision (a), (b), or (c) shall be credited by the county treasurer pursuant to Section 1463.29 to the governmental entity having jurisdiction over, or responsibility for, the facility or vehicle involved, to be used for removal of the graffiti or other inscribed material or replacement or repair of the property defaced by the graffiti or other inscribed material.  Before crediting these fines to the appropriate governmental entity, the county may determine the administrative costs it has incurred pursuant to this section, and retain an amount equal to those costs.

"Any community service which is required pursuant to subdivision (a), (b), or (c) of a person under the age or 18 years may be performed in the presence and under the direct supervision, of the person's parent or legal guardian.

"(f)   As used in this section, the term `graffiti or other inscribed material' includes any unauthorized inscription, word, figure, mark, or design that is written, marked, etched, scratched, drawn, or painted on real or personal property."

Section 640.6 provides:

"(a)   Except as provided in Section 640.5, any person who defaces with graffiti or other inscribed material any real or personal property not his or her own, when the amount of the defacement, damage, or destruction is less than two hundred fifty dollars ($250), is guilty of an infraction, punishable by a fine not to exceed five hundred dollars ($500).   This subdivision does not preclude application of Section 594.

"In addition to the penalty set forth in this section, the court shall order the defendant to perform a minimum of 24 hours of community service not to exceed 100 hours over a period not to exceed 90 days during a time other than during his or her hours of school attendance or employment.

"(b)   If the person has been convicted previously of an infraction under subdivision (a) or has a prior conviction of Section 594, 594.3, 594.4, 640.5, or 640.7, the offense is a misdemeanor, punishable by not to exceed six months in a county jail, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.  As a condition of probation, the court shall order the defendant to perform a minimum of 48 hours of community service not to exceed 200 hours over a period not

to exceed 180 days during a time other than during his or her hours of school attendance or employment.

"(c)   Every person who, having been convicted previously under this section or Section 594, 594.3, 594.4, 640.5, or 640.7, or any combination   of these offenses, on two separate occasions, and having been incarcerated pursuant to a sentence, a conditional sentence, or a grant of probation for at least one of the convictions, is subsequently convicted under this section, shall be punished by imprisonment in a county jail not to exceed one year.  As a condition or probation, the court may order the defendant to perform community service not to exceed 300 hours over a period not to exceed 240 days during a time other than during his or her hours of school attendance or employment.

"(d)   Upon conviction of any person under subdivision (a), the court, in addition to any punishment imposed pursuant to subdivision (a), (b), or (c), at the victims's option, may order the defendant to perform the necessary labor to clean up, repair, or replace the property damaged by that person.

"(e)   If a minor is personally unable to pay any fine levied for violating subdivision (a), (b), or (c), the parent or legal guardian of the minor shall be liable for payment of the fine.  A court may waive payment of the fine or any part thereof by the parent or legal guardian upon a finding of good cause.

"Any community service which is required pursuant to subdivision (a),. (b), or (c) of a person under the age of 18 years may be performed in the presence, and under the direct supervision, of the person's parent or legal guardian.

"(f)   As used in this section, the terms `graffiti or other inscribed material' includes any unauthorized inscription, word, figure, mark, or design that is written, marked, etched, scratched, drawn, or painted on real or personal property."

Before analyzing what effect, if any, sections 594, 640.5, and 640.6 have upon the city ordinance in question, we must first examine the rights and powers of charter cities under the Constitution.  Article XI, section 5, subdivision (a) provides:

"It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws.  City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith."

Under these constitutional provisions, a charter city may adopt and enforce ordinances that conflict with general state laws, provided the subject of the regulation is a "municipal affair" rather than one of

"statewide concern." (*Johnson* v. *Bradley* (1992) 4 Cal.4th 389, 399; *Doe* v. *City and County of San Francisco* (1982) 136 Cal.App.3d 509, 512.)

Of course, if no state law is "inconsistent" with the ordinance in question, we need not consider whether the matter is a "municipal affair." Our first task, then, is to determine whether this particular ordinance concerning graffiti is in conflict with sections 594, 640.5, and 640.6. (See *Johnson* v. *Bradley, supra*, 4 Cal.4th at 398-399; *California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1991) 54 Cal.3d 1, 16-17; *Fisher* v. *County of Alameda* (1993) 20 Cal.App.4th 120, 126; *Fielder* v. *City of Los Angeles* (1993) 14 Cal.App.4th 137, 143.)

It is well settled that a local ordinance is "in conflict" with a state statute if it duplicates the statute.[2] In *In re Portnoy* (1942) 21 Cal.2d 237, 240, the court determined that certain provisions of a local gambling ordinance constituted a duplication of existing provisions of the Penal Code:

"Insofar as the provisions of Ordinance No. 248 purport to prohibit acts which already are made criminal by the Penal Code, it is clear that they exceed the proper limits of supplementary regulation and must be held invalid because in conflict with the statutes which they duplicate."

In *In re Sic* (1887) 73 Cal. 142, 146, the court stated:

"The section plainly covers the same ground as the Penal Code. It was probably intended to cover some supposed defects in the Penal Code, still it denounces as criminal precisely the same acts which are attempted to be proscribed by the code . . . ."

In *Pipoly* v. *Benson* (1942) 20 Cal.3d 366, 371, the court held that a pedestrian road crossing ordinance duplicated provisions of the Vehicle Code, stating that the "invalidity arises . . . from the inevitable conflict of jurisdiction which would result from dual regulations covering the same ground." (See also *In re Mingo* (1923) 190 Cal. 769, 771 [liquor possession ordinance duplicated Wright Act]; 66 Ops.Cal.Atty.Gen. 266, 268 (1983) [harmful matter ordinance duplicated Penal Code provisions].)

Here, it is apparent that the city's ordinance duplicates the provisions of sections 594, 640.5, and 640.6 by prohibiting the same type of conduct.[3] A violation of the ordinance is a violation of one of the statutes. Moreover, the ordinance specifies different punishment for the proscribed criminal conduct, thus contradicting the terms of the statutes regarding punishment. (See *Ex parte Daniels* (1920) 183 Cal. 636, 641-648 [finding "contradiction" where local legislation purported to fix a

---

[2]Other grounds for finding a conflict are when the local legislation "contradicts, or enters an area fully occupied by general law . . . ." (*Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 897-898.)

[3]We are not concerned in this opinion with other types of unlawful conduct, such as maintaining a nuisance. (See Gov. Code, §§ 38771, 53069.3; *Korean American Legal Advocacy Foundation* v. *City of Los Angeles* (1994) 23 Cal.App.4th 376, 388; *City of Costa Mesa* v. *Soffer* (1982) 11 Cal.App.4th 378, 384-385; *Gluck* v. *County of Los Angeles* (1979) 93 Cal.App.3d 121, 132-133.)

lower maximum speed limit for motor vehicles than that which general law fixed].)   Plainly the city's ordinance is in conflict with general law.

The next step, then, is to determine whether the subject matter of the state legislation is of "statewide concern."  (See *Johnson* v. *Bradley, supra,* 4 Cal.4th at 399; *California Fed. Savings & Loan Assn.* v. *City of Los Angeles, supra,* 54 Cal.3d at 17; *Fisher* v. *County of Alameda, supra,* 20 Cal.App.4th at 126; *Fielder* v. *City of Los Angeles, supra,* 14 Cal.App.4th at 143.)

We entertain no doubt that the identification, prosecution, and punishment of criminal conduct, including the placement of graffiti upon public and private property, is a matter of statewide concern.  Defacing property with graffiti is not unique to a particular city or cities generally; it is a recognized statewide problem.  (See, e.g., § 13825; Welf. & Inst. Code, § 742.10.)  In *Farmer* v. *Behmer* (1909) 9 Cal.App. 773, 781, the court reasoned:

> "It is a novel doctrine that the legislature may empower a city, by its charter, to suspend the operation of general laws punishing crime.  No one would for a moment contend that murder, manslaughter, larceny, burglary, or any other of the long list of crimes punishable by statute could be condoned or palliated by an ordinance regulating or licensing such offenses.  The heinousness or degree of the crime can make no difference.  The statute punishing the keeping of a house of prostitution as a crime can no more be suspended in its operation than any other criminal statute.  Nor can it be held that the charter provision works a repeal of the general law, for the charter powers may not be exercised so as to conflict with general laws save only in regard to what may properly be called "municipal affairs," and surely the licensing of forms of vice and crime which are both mala in se and mala prohibita cannot be so classed."

In *In re Shaw* (1939) 32 Cal.App.2d 84, the City of Los Angeles argued that its ordinance superseded a state penal statute due to the "municipal affairs" doctrine.   The court responded:

> "This contention is not well founded for the reason that the acts here charged for many years have been denounced by the laws of the State of California and designated as a felony, and it cannot now be said that the commission of such acts is strictly and solely a municipal affair of the City of Los Angeles.
>
> "The people of the state are primarily interested in the prevention of such crimes as are here charged, and the fact that the freeholders' charter of the city of Los Angeles designates some parts of the acts charged in the indictments as a misdemeanor only, cannot save the petitioners from a prosecution for the commission of the felony charged under the state law."  (*Id.* at p. 86.)

Here, we have a statewide criminal problem of seemingly epidemic proportions, often involving juvenile gang members who would normally be subject to the state's juvenile justice system. We find sections 594, 640.5, and 640.6 to be reasonably related to the resolution of this statewide concern, without unduly interfering with legitimate municipal interests.  (See *California Fed. Savings & Loan Assn.* v. *City of Los Angeles, supra,* 54 Cal.3d at 17, 24-25.)

We conclude that a charter city ordinance making it a crime to place graffiti upon real or personal property located within the city would be void due to its duplication of state criminal statutes.

\* \* \* \* \*